UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IRIS PANZETTA,

                                        Plaintiff,

        v.                                                      Action No. 3:11-CV-174

FOOD LION, LLC,

                                        Defendant.

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment. (Doc. No. 11.) Defendant moves the Court to enter summary judgment in its favor, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court GRANTS the Motion.

### I.    BACKGROUND

The undisputed facts are as follows. Iris Panzetta ("Panzetta") was involved in an accident at a Food Lion store on October 24, 2009. Panzetta arrived at Food Lion at approximately 10:30 a.m. on the day of the accident. Upon entering the store, Panzetta turned right and walked through an area of soda displays to get to the section where bananas were located. Panzetta slipped on a grape and fell, breaking her hip.

Panzetta did not look at the floor before falling. She does not know how long the grape had been on the floor nor how it ended up on the floor. She also does not know if the grape was intact or smashed when she slipped on it. Panzetta believes the grape was almost the same color as the floor.

1

Robert Weaver, the Food Lion store manager, was working the day of Panzetta's accident. Weaver was in the back office when he learned Panzetta fell. When Weaver arrived at the scene of the accident, the grape had already been cleared from the floor. Weaver stated that, as store manager, it is his duty to make sure he and all his associates correct anything that needs correcting in the store. Weaver also stated store policy requires the produce area to be inspected frequently and constantly. The produce department was swept on average once every fifteen to thirty minutes the day of the accident.

Panzetta's husband, James Panzetta, arrived at the store shortly after the fall. James Panzetta found his wife lying next to a soda display near the produce section. An employee at the accident scene told him store employees had cleaned up a smashed grape.

No party can say how long the grape had been on the floor prior to Panzetta's fall, nor does any party know the grape's origin.

Panzetta filed a Complaint against Food Lion, LLC, in the Circuit Court for Lancaster County, Virginia, alleging Food Lion negligently allowed a grape to remain on the grocery store floor and that Food Lion knew or should have known that this slipping hazard existed. Food Lion removed to this Court.

## II.    LEGAL STANDARD

A motion for summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the

burden of establishing the nonexistence of a triable issue of fact by "showing . . . that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (internal quotation marks omitted).

"Summary judgment is appropriate only where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Tuck v. Henkel Corp., 973 F.2d 371, 374 (4th Cir. 1992) (citing Anderson, 477 U.S. at 248–49). All "factual disputes and any competing, rational inferences [are resolved] in the light most favorable to the party opposing [the] motion." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)) (internal quotation marks omitted).

In most cases, issues of negligence are not susceptible to summary judgment. Where a plaintiff fails to state specific facts and produce concrete evidence to support her claim, however, a defendant may be entitled to that relief. See Vaughn v. Huff, 186 Va. 144, 155, 41 S.E.2d 482, 488 (1947).

### III.    DISCUSSION

A federal court sitting in diversity must apply the substantive law of the forum state. St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co., 365 F.3d 263, 272 (4th Cir. 2004). The scope of premises liability in this case is therefore governed by Virginia law.

A plaintiff asserting a negligence claim must introduce "evidence which constitutes proof that the defendant breached some duty which it owed the plaintiff, and caused, by such breach, [the] injury." Colonial Stores Inc. v. Pulley, 203 Va. 535, 537, 125 S.E.2d 188, 190 (1962) (citing Murphy v. J. L. Saunders, Inc., 202 Va. 913, 917, 121 S.E.2d 375, 378

(1961)). The plaintiff bears the burden of proving negligence. <u>Safeway Stores, Inc. v. Tolson</u>, 203 Va. 13, 15, 121 S.E.2d 751, 752 (1961).

The Supreme Court of Virginia has said the "rules applicable to slip-and-fall cases are well settled." <u>Winn-Dixie Stores, Inc. v. Parker</u>, 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990). Under these well-settled rules, a store owner owes a customer

> the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it [is] required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of the unsafe condition if it [is] unknown to her, but [is], or should [be], known to the defendant.

<u>Pulley</u>, 203 Va. at 537, 125 S.E.2d at 190.

In slip-and-fall cases, Virginia law distinguishes "dangerous conditions caused by 'affirmative conduct' of the defendant, and those resulting from 'passive conduct.'" <u>Turley v. Costco Wholesale Corp.</u>, 220 F. App'x 179, 181 (4th Cir. 2007) (per curiam) (citing <u>Ashby v. Faison & Assocs., Inc.</u>, 247 Va. 166, 169–70, 440 S.E.2d 603, 605 (1994)). An employee's voluntary movement of a plant, causing a "slimy" leaf to fall to the floor, is an example of "affirmative" conduct. Allowing water to accumulate in a lobby, by contrast, is an example of "passive" conduct. <u>Ashby</u>, 247 Va. at 169, 440 S.E.2d at 605. Panzetta concedes there is no evidence of record to establish Food Lion placed the grape on the floor before she fell. This summary judgment motion therefore turns on whether a jury could find that Food Lion should be held liable for passive conduct.

Where, as here, the hazard "resulted from passive conduct, the plaintiff may prevail only if he shows that 'the defendants had actual or constructive notice' of the dangerous

condition." Turley, 220 F. App'x at 181 (quoting Ashby, 247 Va. at 170, 440 S.E.2d at 605). This requires a showing that the defendant "'knew or should have known[ ] of the presence of the [hazard] that caused [the] fall and failed to remove it within a reasonable time or to warn of its presence.'" Id. at 182 (quoting Ashby, 247 Va. at 170, 440 S.E.2d at 605); see also Great Atl. & Pac. Tea Co. v. Berry, 203 Va. 913, 915–16 (1962) ("In cases dealing with injuries received from falls caused by a foreign substance on the floor of a store where the public is invited to step, courts have consistently held that before recovery can be had it must be shown that the substance constituted a hazard and that the defendant knew or in the exercise of reasonable care should have known it was there.").

Panzetta argues the evidence presents a jury question as to whether Food Lion had actual or constructive knowledge of the slipping hazard on which she fell before her accident. Food Lion contends Panzetta has not shown Food Lion had actual or constructive notice of any grape or other substance on the floor in the area in which Panzetta fell, and that Food Lion consequently has discharged any duty if may have had to Panzetta regarding the grape or any other substance.

In support of its position, Food Lion states that there is no evidence even suggesting Food Lion had actual notice of the grape. As to its argument that Food Lion had no constructive notice of any grape or other substance, Food Lion relies on Parker, supra, a case in which a plaintiff slipped on a snap bean while shopping in a Winn-Dixie grocery store. In Parker, an employee had mopped the area where the plaintiff fell within two minutes before the fall. There was no evidence that the defendant knew the bean was on the floor, nor was there any evidence showing the length of time the bean may have been there. 240 Va. at 184, 396 S.E.2d at 651. Repeating verbatim what it had said in Pulley, the

court determined "[i]t [wa]s just as logical to assume that [the bean] was placed on the floor an instant before [Parker] struck it as it [was] to infer that it had been there long enough that [Winn-Dixie] should, in the exercise of reasonable care, have known about it." Id. (quoting Pulley, 203 Va. at 537–38, 125 S.E.2d at 190).

Food Lion contends that, as in Parker, there is nothing to suggest the grape had been on the floor for any specific period of time. Weaver testified store policy requires the produce department to be swept on average every fifteen to thirty minutes, and Weaver had no knowledge that would suggest the produce area was not swept in accordance with store policy on the day of the accident. This, combined with application of the rule that no facts allow an inference to be drawn as to how long the grape was on the floor where there is nothing in evidence to suggest the grape had been on the floor for any specific period of time, leads to the conclusion that there is no basis for finding Food Lion should have known about the grape.

Food Lion next cites Turley v. Costco Wholesale Corp., 220 F. App'x 179 (4th Cir. 2007) (per curiam). The plaintiff in Turley slipped and fell while getting a shopping cart. The plaintiff was unaware of the exact nature of the substance on which he slipped. Id. at 180. Facts showed the area had been inspected thirty minutes before the fall and the store employee did not see the slippery substance at that time. Id. at 182. The district court granted summary judgment and the Fourth Circuit affirmed, finding there was no evidence Costco knew or should have known of the presence of the substance on which the plaintiff fell. Id. at 183.

Food Lion argues the instant case presents a similar situation. The grape's origin has not been conclusively established and an inspection time of no more than fifteen to thirty

6

minutes has been offered. Because no evidence has been offered regarding the grape's origin, the length of time the grape was on the floor, or whether Food Lion employees failed to see the grape during an inspection, Food Lion argues there are no material facts in dispute and Panzetta is unable to meet her burden of proof. Thus, summary judgment is appropriate.

Panzetta responds that in both Pulley and Parker, the Supreme Court of Virginia focused on the fact that there was a period of time between when the store employees observed the areas at issue and the time when the plaintiffs slipped and fell. According to Panzetta, these time periods of "non-observation" were the critical fact that lead to the court's conclusion in each case that it was just as logical to assume the slipping hazard had only been on the floor for an instant as it was to infer that the hazard had been present for long enough that a store exercising reasonable care should have known about it.

Panzetta asserts that this case is distinguishable from Pulley and Parker, and thus presents a jury question, because the area in which Panzetta fell was under "constant" supervision. Panzetta states Weaver testified that "produce associates are trained to make observations of the sales floor as needed to ensure a safe environment for all guests." (Pl. Attach. 1, at 15:23–25.) He also testified that the produce department floor is inspected "frequently" and "[a]ll the time" and agreed that the produce floor is "under constant inspection." (Pl. Attach. 1, at 16:5–13.) Moreover, Panzetta argues, Food Lion's statement of undisputed facts states the store policy required the produce area to be "inspected frequently and constantly." (Def. Mem. In Support, at 3.)

Panzetta next argues the evidence shows Lisa Zdyb, a Food Lion employee who worked in the produce department the day of Panzetta's accident, kept the area under

constant surveillance. Zdyb testified she keeps her area of the store clean during her entire shift and she continuously cleaned her area on the day in question. (Pl. Attach 2, at 8:11–19.) Zdyb stated although "[g]rocery" was responsible for cleaning the area where Panzetta fell, Zdyb was responsible for cleaning the area around the grape counter. (Pl. Attach. 2, at 7:18–8:2.) Zdyb stated the area where Panzetta fell was fifteen feet away from the grape display and if she had seen a grape in the area where Panzetta fell, it would have been her job to clean it up. (Pl. Attach. 2, at 9:24–10:9.)

Panzetta believes these facts remove this situation from the rulings in <u>Parker</u> and <u>Pulley</u>, and raise a jury question as to whether the grape had been on the floor long enough that Food Lion, in the exercise of ordinary care, should have known about it. The facts in <u>Parker</u> and <u>Pulley</u> are that there were periods of time before the falls when no store employees observed the area where the plaintiffs fell. Thus, the question of whether the slip hazard had been on the floor long enough for the store to have discovered it was open for speculation. According to Panzetta, the evidence in this case is different: it shows there was no lag time between when the last Food Lion employee observed the area where Panzetta fell and the fall itself. Specifically, there is testimony that the area where Panzetta fell was under constant inspection. Panzetta argues "constant" means "continually occurring or recurring." If the area was under constant inspection, Panzetta argues, a jury could find the grape was on the floor for a sufficient amount of time before Panzetta fell so that a Food Lion employee, in the exercise of ordinary care, should have seen the grape and cleaned it up before the fall. Thus, the jury could find the Food Lion employees knew, or should have known, the grape was on the floor before Panzetta fell.

The evidence, however, shows the area was not under "constant" supervision as defined by Panzetta. To the contrary, Zdyb, the employee responsible for clearing any rogue grapes, had left the area and was in the checkout line purchasing candy when Panzetta fell. (See Pl. Attach. 2, at 10:21–13:7.) Zdyb testified she did not see any grapes on the floor prior to going to the checkout line. (Pl. Attach. 2, at 12:2–5.) Thus, it appears the area was not under "constant" supervision and "there is no evidence as to any period of time over which the defendant or its agents or servants actually had knowledge of the presence of the alleged foreign substance or that they should, in the exercise of reasonable care, have had such knowledge." Safeway Stores, Inc. v. Tolson, 203 Va. 13, 15, 121 S.E.2d 751, 752 (1961).

As was the case in Pulley and Parker, there is no evidence in the instant matter

> that [Food Lion] knew of the presence of the [slipping hazard] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed upon the floor an instant before [Panzetta] struck it as it is to infer that it had been there long enough that [Food Lion] should, in the exercise of reasonable care, have known about it.

Parker, 240 Va. at 184, 396 S.E.2d at 651 (quoting Pulley, 203 Va. at 537–38, 125 S.E.2d at 190).

Two equally competing inferences can be drawn from the evidence in this case—that the grape was on the floor for a long enough period of time that it would be fair to impute knowledge of its presence to the Food Lion, and that the grape was on the floor for a mere instant, in which case it would be unfair to impute knowledge of the grape's presence to Food Lion. Virginia courts do not permit recovery if the jury has to speculate in order to impute knowledge, and therefore liability, to the defendant. See Berry, 203 Va. at 916–17, 128 S.E.2d at 313–14 ("In some jurisdictions the courts permit juries to speculate

9

upon how long a foreign substance had been on the floor or how it got there. Such decisions are in the minority. . . . These decisions represent a liberal expansion of the doctrine of 'constructive notice' in the law of negligence. . . . [M]ost jurisdictions do not follow this view. We reject it. . . . The plaintiff cannot be said to have made out a case for the jury when it is necessary for the jury to speculate or guess in order to allow her a recovery."); see also Tolson, 203 Va. at 16, 121 S.E.2d at 753 ("Where the evidence shows that any one of several things may have caused the injury, for some of which the defendant is responsible and for some of which it is not, and leaves the real issue to speculation and conjecture, then the plaintiff has failed to establish a case.").

Because Panzetta has presented no evidence that the grape was on the floor long enough for Food Lion to have actual or constructive knowledge of its presence, she has not made a prima facie case of negligence.

## IV.   CONCLUSION

Because Panzetta has not set forth a prima facie case of negligence, the Court finds no triable issues exist. Accordingly, the Motion for Summary Judgment is GRANTED.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this   13th    day of September 2011

10